Leon D. Lazer, J.
Where the public utility involved is not subject to the jurisdiction of the Public Service Commission, does the Supreme Court of the State possess the equity power to place in effect a new utility rate schedule? The question is of current moment because the plaintiff utility corporation (engaged in sewage collection and disposal) has brought an action for a judgment declaring that an amended rate proposal which it has submitted is fair and reasonable and placing it in effect. Plaintiff has concurrently moved for a temporary mandatory injunction, pendente lite, to effectuate an interim rate schedule which is somewhat lower than its amended rate proposal and it is that motion which is sub judice. The defendants, the Town Board of the Town of Brook-haven (the "town board”) and the Suffolk County Sewer Agency (the "sewer agency”), oppose the motion.
Plaintiff is a sewage-works corporation organized pursuant to article 10 of the Transportation Corporations Law to service an area of Stony Brook in the Town of Brookhaven. The gravamen of plaintiff’s complaint is that it is providing that service at a substantial financial loss and that the defendants’ refusal to discharge their statutory duty to agree to adequate rates has compelled it to continue furnishing service at rates so inadequate as to constitute a confiscation of its property. Sewage-works corporations are not regulated by the Public Service Commission and the rate-setting procedure for such entities is to be found in an arcane statute, section 121 of the Transportation Corporations Law which reads as follows: "A sewage-works corporation shall supply each city, town, village or other municipal area or district wherein such corporation operates, and the inhabitants therein, with facilities or make provision for the collection, treatment and disposal of sewage at fair, reasonable and adequate rates agreed to between the corporation and the local governing body or bodies, and, in addition, in the county of Suffolk, the county sewer agency, notwithstanding the provisions of any general, special or local law. Rates shall be reviewable at intervals of not more than five years or at any time by petition of the corporation or motion by the local governing body on written notice after a period of ninety days. The local governing body of a city or village, or of a county or town on behalf of a sewer district or for a special sewer improvement shall have the power to *375 contract with a sewer-works corporation for collection, treatment or disposal of sewage. No contract for such services shall be executed for a period greater than ten years.”
The plaintiff was organized in 1964 and the rate schedule which was established by agreement between it and the town board in 1965 has been in effect since then. On March 16, 1974, plaintiff submitted to the defendants a proposal to increase the annual rate for service to detached residential units from the present rate of $124.80 to $254.47 and from $99.84 to $203.63 for attached residential units. The proposed new rates were based upon an analysis of the cost of service for the year 1973 and projected costs for the year 1974. A letter, which accompanied plaintiff’s submission, requested that the defendants schedule a public hearing on the matter in four weeks. The supervisor of the Town of Brookhaven acknowledged receipt of the proposal with a letter in which he stated that he was not "in a mood to listen to a rate increase” considering the "punishment” he would have to take from the public.
The sewer agency responded to plaintiff with a letter dated April 12, 1974 requesting additional data which was subsequently furnished after considerable delay. In December, 1974, plaintiff dispatched a second letter to the Town Supervisor reminding him of its request for a hearing on its rate proposal and defendants finally scheduled a public hearing for the evening of February 26, 1975. The hearing was held pursuant to local law 3 of 1968 of the Town of Brookhaven which mandates a public hearing before a rate is fixed.
At the hearing plaintiff filed an amended and higher rate proposal based on its actual costs for the year 1974 and projected costs for the year 1975. The hearing attracted a large throng of homeowners who voiced various grievances which the plaintiff alleges occupied most of the time devoted to the hearing and prevented serious consideration of the fiscal aspects of its proposal. After the hearing, the sewer agency advised plaintiff that it would take no further action with respect to the rate proposal until the latter complied with all "standards of operation and maintenance and requirements of performance of your sewage treatment plant and sewer system as set forth by the Suffolk County Department of Environmental Conservation and elimination of oders [sic] and other unsatisfactory conditions which violate the aforementioned standards, codes, rules and regulations.” Aside *376 from the general statement referred to, the sewer agency has not provided any specifics of the alleged violations. The Town Supervisor wrote the plaintiff that the town board would not act until it received information which it had assertedly requested at the hearing and that after receipt of the information another hearing would be held. Plaintiff asserts that the town board has not, as promised, detailed its request. This action was commenced on April 18, 1975.
It is plaintiff’s contention that the defendants not only have breached their statutory duty to agree to fair and reasonable sewer rates but that neither of them intends to agree to any increase until compelled to do so by judicial mandate. Plaintiff’s motion for preliminary mandatory relief requests that the court immediately effectuate its original proposal of March 16, 1974 as an interim rate pending plenary trial relative to the higher proposal which it submitted at the public hearing.
Although defendants’ opposition is frivolous to the extent that it raises objection to service of the motion papers (see CPLR 6311, CPLR 311, subd 5, CPLR 312), more significant resistance is represented by the claims that the action is prematurely commenced and that the court is without jurisdiction and power to grant the relief sought. The prematurity argument is based upon the argument that the rate schedule filed at the February 26, 1975 hearing was a new proposal since it differed from the earlier one filed in March of 1974. Since the action was commenced on April 18, 1975, defendants contend that plaintiff has not met the mandate of section 121 of the Transportation Corporations Law that 90 days expire before review of any new proposal. In response, plaintiff declares that the February proposal was based on actual figures for 1974 and projections for 1975 whereas the original March, 1974 proposal was based on 1973 figures and on 1974 projections and it contends that the 1975 proposal was not a new proposal in the sense that new proceedings were required to be commenced.
Indeed, it is true that there was ample time for defendants to reach a determination on plaintiff’s first proposal and it was the passage of time created by their own delay which resulted in submission of the new empirical facts by plaintiff. The defendants’ delay cannot serve as a legal foundation for even further delay or to require plaintiff to reinitiate its application. The rate-setting authority is bound to consider *377 relevant financial data which is as current as feasible (Matter of Chenango Unadilla Tel. Corp. Public Serv. Comm., 45 AD2d 409) and it is not improper to switch test years while hearings are in progress as new data becomes available (Matter of City of New York v Public Serv. Comm., 42 AD2d 259). Even where final rates have been fixed and refunds ordered, the commission must reopen hearings rather than force a utility to bring new proceedings where experience shows predictions to have been incorrect (New York Tel. Co. v Public Serv. Comm., 36 AD2d 261, mod 29 NY2d 164).
Nevertheless, regardless of defendants’ patently dilatory tactics, it still must be determined whether equity jurisdiction exists to grant the relief sought by plaintiff, and indeed, whether it is entitled to the relief.
In the absence of a contract or of a statutory bar, a public utility cannot be compelled to operate at an existing rate pending investigation of the reasonableness of a proposed rate schedule (State Public Utilities Comm. v Chicago, & West Towns Ry Co., 275 Ill 555). Nor can such a utility company be deprived by statutory provision of a reasonable return upon its investment for an extended period of time pending a decision on a rate proposal (New Rochelle Water Co. v Public Serv. Comm., 31 NY2d 397). A public utility company need not await indefinitely the decision of the rate-making body before applying for relief (Prendergast v New York Tel. Co., 262 US 43). Assuming arguendo that the rate increase sought by plaintiff is reasonable, a threshold question yet remains as to whether the lapse of time since the original proposal was filed has been sufficient to mandate judicial relief.
The Public Service Law (see §§ 66, 80, 89-c and 92) and the Transportation Law (see §§ 119, 147 and 173) both contain provision for a 120-day suspension of a proposed rate schedule submitted by a public utility company in order to provide the Public Service Commission with time to make its determination, with the right to prolong the suspension for additional periods up to six months if necessary. While such a 10-month hiatus has been declared constitutional (New Rochelle Water Co. v Public Serv. Comm., supra), it also has been held that prolonging the period during which a public utility company must bear a loss pending a rate determination for as long as a year may constitute confiscation (Municipal Gas Co. v Public Serv. Comm., 225 NY 89). It is thus the expressed public policy of this State that a 10-month suspension of a rate *378 proposal pending rate determination is not a deprivation of due process but that prolongation for a year or more while losses continue may constitute such a deprivation.
Asserting that it suffered a new loss of $209,041 during the calendar year 1974 and that it has an accumulated deficit of $545,414, plaintiff points out that the defendants failed to conduct a hearing on their original proposal until almost a year after it had been filed. The hearing was followed by further and seemingly indefinite delay. The town board’s attitude toward the submission lends support to the theory that municipal governmental bodies composed of elected officials are too prone to assume the role of public defender to function successfully as rate-makers (see Thomson and Smith, Public Utilities Economics [1941], p 190). If plaintiffs proposed rates are reasonable, it is entitled to some form of judicial relief.
Defendants claim, however, that plaintiffs only remedy is an article 78 proceeding and that it cannot maintain this action for declaratory judgment because the public hearing provision in the local ordinance constitutes the rate-making procedure quasi-judicial rather than legislative in nature. Rate-making procedures are customarily classified as a legislative function rather than a judicial one (see, e.g., Minnesota Rate Cases, 230 US 352; Matter of Northwestern Nat. Ins. Co. v Pink, 288 NY 359) even though most of the statutory rate-making provisions, in our State at least, contain provision for hearings (see, e.g., Public Service Law, §§ 66, 80, 89-c, 92 and Transportation Law, §§ 119, 147, 173). Nevertheless, where notice and hearing are prescribed by statute, rate-making orders are sufficiently "judicial” to be reviewable by certiorari (Matter of Lakeland Water Dist. v Onondaga County Water Auth., 24 NY2d 400) and there is some question as to whether a plenary equity review is even available (see, e.g., New York Tel. Co. v Public Serv. Comm., 36 AD2d 261, mod 29 NY2d 164, supra). In the instant case, however, it is not review of a rate-setting agency’s determination which plaintiff seeks but instead a plenary review of the reasonableness of the rates it has itself proposed. A declaratory judgment action is proper where review is sought of the reasonableness of rates set by a utility which has the power to set its own rates and no statutory administrative review exists (Matter of Lakeland Water Dist. v Onondaga County Water Auth., supra). Here, although the utility does not have the power to effectuate its *379 own rates, if it is true that defendants have refused to perform their statutory duty, it would be entitled to judgment declaring the reasonableness of the rates it has proposed and placing them in effect unless another remedy lies.
While the general rule is that a plaintiff cannot sue in equity where an adequate and complete remedy is available at law (Kane v Walsh, 295 NY 198), it is apparent that mandamus compelling the instant defendants to comply with section 121 of the Transportation Corporations Law would not constitute such a remedy. The statute consists of three parts enacted at different times. The first sentence, adopted in 1960 (L 1960, ch 1067, amd by L 1966, ch 290), provides for the setting of rates by agreement, suggesting that a contract or franchising situation was envisioned. The last two sentences of the section, however, expressly authorize the local governing body to enter into a contract for sewage services and this provision was not enacted until 1970 (L 1970, ch 828). The middle sentence, also enacted in 1970 (L 1970, ch 828), provides for a periodic "review” of the rates upon "petition” of the corporation or "motion” of the local governing body. The statute cannot be read to mandate periodic judicial review of rates, not only because the courts have no rat e-fixing power (Morrell v Brooklyn Borough Gas Co., 231 NY 398; Bronx Gas & Elec. Co. v Public Serv. Comm., 190 App Div 13; People ex rel New York Cent & Hudson Riv RR Co v Public Serv. Comm., 159 App Div 546, affd 215 NY 241; Town of Mamaroneck v New York Interurban Water Co., 126 Misc 382) and may only pass on the question of reasonableness (see Pond, Public Utilities [3d ed.], § 551), but also because the concept of mandatory periodic judicial review of utility rates is absurd and absurdity cannot be deemed to have been the intent of the Legislature (cf. Mayor etc. of New York v Manhattan Ry. Co., 143 NY 1). Therefore it is the local governing board and the utility which must conduct a joint review on the initiative of either under this statute, but it remains unclear as to what is to happen after request for review is initiated by either party. Must they "agree” (a word used only in the first sentence) on a new rate schedule or is the town board (and, in Suffolk, the sewer agency) empowered to establish a new rate unilaterally? A municipality’s power to prescribe rates by contract is distinguishable from the power to regulate by coercion (12 McQuillin, Municipal Corporations, § 34.144). With respect to coercion, the general rule is that municipal *380 authority to prescribe rates will not be inferred but must be clearly delegated (see e.g., Matter of Niagara, Lockport & Ontario Power Co., 229 App Div 295). The language of the Transportation Corporations Law referring to rate-setting by agreement militates against any conclusion that the rate could be set unilaterally by the defendants by coercion. Therefore, since defendants, acting in their legislative capacity, could not be compelled to "agree” to plaintiffs proposal, mandamus would be futile (cf. Matter of Spano v Close, 266 App Div 1023) and plaintiff may maintain a declaratory judgment action for the relief it seeks.
If plenary relief is available to plaintiff so is preliminary injunctive relief if plaintiff has established a clear legal right to it and demonstrated that it will suffer irreparable injury (Graves v Lombardi, 42 AD2d 700). On the question of injury, the instant statute provides no authority for a grant of an interim rate increase by the rate-setting authority itself or for reparations to the utility for losses incurred during the rate-setting procedure should it eventually transpire that an increase was merited (cf. New Rochelle Water Co. v Public Serv. Comm., 31 NY2d 397, supra). Moreover, the evidence clearly indicates that the defendants do not propose to perform their duties at any given time or indeed within a reasonable time (see Alaska Public Utilities Comm. v Greater Anchorage Area Borough, 534 P2d 549 [Alaska, 1975]). Thus, since it is undisputed that plaintiff is operating at a loss, it has demonstrated injury beyond peradventure. However, the sewer agency contests the reasonableness of the imterim rate schedule and the court is entitled to consider the public interest and welfare as well as the private interest and welfare of the parties (Wormser v Brown, 149 NY 163; International Ry. Co. v Barone, 246 App Div 450).
The sewer agency’s challenge to the reasonableness of the proposed rates is dual. It assails the soundness of plaintiffs projections of revenue and expenditures and it questions the validity of its method of computing cost. Among the 1975 projections attacked by the agency’s fiscal expert, Shapiro, in his affidavit, is a 5% contingency item of $21,744 labeled "Variation allowance.” Shapiro asserts that since actual expenditures for 1974 did not equal the projections for that year the item is superfluous, particularly in view of another general inflation contingency item of 10% and other line item increases projected in specific cost categories for 1975. In *381 addition, it is apparent that commercial revenues have been understated in the amount of $18,950 in plaintiffs projections. While the two stated monetary figures total in excess of $40,000 or almost 20% of the proposed increase, they do not necessarily destroy the basic integrity of plaintiffs predictions of future revenue needs. More potent is Shapiro’s attack on the interest component of plaintiffs cost allocations.
Whether the full extent of plaintiffs interest payments on capital loans from its parent company must be honored as legitimately chargeable to service rates (see Steenerson v Great Northern Ry. Co., 69 Minn 353) is the subject of further debate between the parties. While defendants contend that capitalization of plaintiffs investment would result in a lower rate for consumers than charging them for interest payments, plaintiff argues that an allowable net return on capital investment after payment of income taxes might result in even higher utility rates. But neither plaintiff nor the sewer agency document their claims concerning this issue by any demonstration of what an appropriate return should be on plaintiffs capital investment. Nevertheless, for the year 1974 adjusted interest costs to plaintiff on loans from its parent company amounted to $91,811 which is more than 25% of the actual cost of service for that year. Since intercompany transactions and relations must be carefully scrutinized by the regulatory body (Rhode Is. Consumers’ Council v Smith, 111 RI 271), the interest issue, spurious as it actually may be, requires the type of examination which only plenary trial can offer. Therefore, despite the clear proof that the utility is suffering substantial and continuing losses, there is still a question as to whether the interim rate is a reasonable one. To determine that issue without subjecting it to the adversary process of a trial, would be summarily to accept all of plaintiffs claims at face value and summarily to reject all of defendants’ arguments including the issue of the character of the service rendered by the plaintiff. Character of service is a factor in fixing rates (Nichols, Ruling Principles of Utility Regulations [1955], p. 396). The motion therefore must be denied.
Nevertheless, it is apparent that the Legislature’s ill-conceived rate-setting statute has placed the plaintiff in a Kafkaesque position. It is clearly entitled to a substantial rate increase which it cannot obtain without either seeking agreement from those who do not care to agree or obtaining relief from judicial authorities who are powerless to fix rates and *382 can only declare whether a particular rate sought to be charged is reasonable. Plaintiffs proposal to refund overcharges should the interim rate be found unreasonable after trial is not acceptable because of the steepness of the increase sought, the weakness of plaintiffs financial position and judicial inability to do anything more than approve or disapprove of a specific proposed rate. While denial of the motion is mandated because there is doubt as to the clearness of plaintiffs right to impose the interim rates it seeks (cf. Town of Southeast v Gonnella, 26 AD2d 550), the issue of the reasonableness of the interim rate schedule will be referred to the trial court which may desire to place it in effect should it find that it cannot sustain the specific rates which are the subject of the plenary action.
In view of plaintiff’s continuing financial losses, the Clerk of Special Term, Part III, will be directed to place the action at the head of the calendar for October 14, 1975 for prompt trial, subject of course to the discretion of the Justice there presiding. Plaintiff will be required to file a note of issue and pay the required fees.