OPINION OF THE COURT
Joseph Harris, J.
Petitioner (City) brings this proceeding under CPLR article 78 to annul and set aside the ruling of the New York State Department of Health (DOH), which, in response to a petition for declaratory rulings by the Coalition of Watershed Towns (Coalition), required the petitioner to pay for certain improvements to sewage treatment plants (STPs) located within the watershed of the City’s drinking water reservoirs.
The petition attacks the declaratory ruling on procedural grounds, alleging noncompliance with section 204 of the State Administrative Procedure Act (causes of action 1 and 2), and substantive grounds, alleging misinterpretation of Public Health Law § 1104 (1) (causes of action 3 and 4). By stipulation dated February 7, 1994, the parties agreed to allow intervention by the Coalition.
Section 204 (1) of the State Administrative Procedure Act provides, in pertinent part, as follows: "On petition of any person, an agency may issue a declaratory ruling with respect to (i) the applicability to any person, property, or state of facts of any rule or statute enforceable by it * * * Each agency shall prescribe by rule the form for such petitions and the procedure for their submission, consideration and disposition. ” (Emphasis added.)
DOH has not promulgated rules or regulations to implement said section 204 of the State Administrative Procedure Act.
On April 21, 1993, the Coalition submitted to DOH a petition for declaratory ruling pursuant to section 204 (1) of the State Administrative Procedure Act. The petition requested *250 that DOH rule on the City’s obligation under Public Health Law § 1104 (1) with respect to costs incurred by STPs in the watershed as a result of the City’s proposed watershed regulations.
Public Health Law § 1104 (1) provides: "When the [State Department of Health] or the commissioner of environmental protection of the city of New York, or the board of water supply of the city of New York, shall, for the protection of a water supply from contamination, makes [sic] orders or regulations the execution of which will require or make necessary the construction and maintenance of any system of sewerage, or a change thereof, in or for any village or hamlet, whether incorporated or unincorporated, or the execution of which will require the providing of some public means of removal or purification of sewage, the municipality, corporation, state or United States or state or United States institution, park, reservation or post owning the water works benefited thereby shall, at its own expense, construct and maintain such system of sewerage, or change thereof, and provide and maintain such means of removal and purification of seweage and such works or means of seweage disposal as shall be approved by the department. For such purpose said municipality, corporation, state or United States institution, park, reservation or post, may acquire, by condemnation the necessary real estate or interest therein or the easement or use thereof whether now used for public or private purposes.”
In its petition, the Coalition requested that DOH rule on the City’s obligation under section 1104 (1) to pay sewage treatment costs in six hypothetical situations. In the first four situations, the Coalition posited that the New York City Department of Environmental Protection (DEP) proposed watershed regulations might require modification of or additions to an existing or new sewage treatment plant or construction of a new plant. In the remaining two situations, the Coalition posited that orders or actions of the State Department of Environmental Conservation (DEC) rather than DEP would require modification of or additions to a sewage treatment plant.[1]
The Coalition explained that its reason for filing the petition was its concern, admittedly hypothetical, about potential *251 "expenses associated with the construction of, or modification to, sewage treatment plants in the New York City watershed resulting from specific requirements which may be included in the city’s revised watershed regulations.”
At the time the Coalition submitted its petition, the City’s proposed revised watershed regulations had not been finalized and were not effective.
Despite its lack of implementing regulations under the State Administrative Procedure Act, DOH agreed to issue the rulings requested by the Coalition. On May 26, 1993 DOH requested briefs on the issues raised by the Coalition’s petition. Because the petition sought rulings on the City’s obligation under the Public Health Law, DOH requested that the City participate in the briefing. The City and the Coalition filed initial briefs on June 29, 1993 and reply briefs on July 27, 1993.
DOH issued its ruling on the questions raised in the Coalition’s petition on September 27, 1993. DOH concluded that section 1104 (1) requires the City to pay construction, maintenance and operating costs for all sewage treatment plants in the watershed, including privately owned plants that are public utilities, where such costs are incurred to comply with DEP or DOH regulations which protect specifically the City’s water supply and are not otherwise required by existing regulations of other regulatory authorities.[2]
Petitioner’s first cause of action alleges that DOH lacked the power to issue a declaratory ruling without having earlier promulgated regulations governing such rulings, as required by section 204 of the State Administrative Procedure Act. Petitioner’s second cause of action alleges that DOH lacked the power to issue a declaratory ruling because the petition lacked a factual predicate.
As objections in point of law, the respondents assert, among other things, that: (1) by participating in the administrative process without raising the issue of DOH’s authority to act in the absence of regulations governing the "form” and "procedure” for declaratory rulings or the contention that an agency *252 cannot issue a declaratory ruling based on assumed or hypothetical facts, the petitioner waived its right to contest these issues; (2) since agencies have discretion to issue declaratory rulings based on assumed or hypothetical facts, petitioner’s cause of action asserting otherwise has no merit and should be dismissed.
Despite knowing that State Administrative Procedure Act § 204 (1) provides: "[e]ach agency shall prescribe by rule the form for * * * petitions [for declaratory rulings] and the procedure for their submission, consideration and disposition”, and despite knowing that no such rules had been promulgated, petitioner nonetheless, without objection,[3] participated in the administrative process by submitting a 32-page memorandum of law and a reply memorandum of law, both of which urged the respondent DOH to adopt petitioner’s interpretation of Public Health Law § 1104 (1). Petitioner does not allege that the absence of "procedural” regulations has in any way prejudiced its ability to participate in or influence the outcome of the administrative process. In fact, there is no additional "protection” afforded to any party under the procedural rules cited by the petitioner that was not provided to the petitioner by the DOH during the administrative process herein.
DOH’s substantive authority to issue declaratory rulings derives from an affirmative grant of power under State Administrative Procedure Act § 204. It is not diminished by its obligation thereunder to promulgate procedural rules for the manner in which such authority is to be exercised. Indeed, State Administrative Procedure Act § 204 does not even set forth specific procedures to govern the exercise of the agency’s substantive authority but leaves the manner, form and procedure for exercise of the substantive authority completely up to the agency.
Jurisdiction in legal proceedings is of two types — "subject matter” jurisdiction, which is nonwaivable, and "personal” jurisdiction, which is waived by the general appearance of the *253 party before the particular tribunal. In the instant proceeding, it is the latter type of jurisdiction that is involved.
Inasmuch as the petitioner appeared generally before DOH without objection, and fully participated in the administrative process resulting in the declaratory ruling and was not prejudiced in any manner by the absence of formal, procedural protection regulations, the petitioner waived its right to contest the issue of the lack of State Administrative Procedure Act § 204 (1) procedural regulations. (Cf., CPLR art 75; Wright v Brockett, 150 Misc 2d 1031.)
Petitioner’s contention that respondent DOH lacked the power to issue a declaratory ruling because the petition lacked a factual predicate was specifically considered and rejected by the Court of Appeals in Matter of Power Auth. v New York State Dept. of Envtl. Conservation (58 NY2d 427 [1983] [PASNYJ). In PASNY (supra), the Court of Appeals held that agencies are authorized to issue declaratory rulings based, as in this case, upon assumed or hypothetical facts. Contrary to petitioner’s contention, the petition for a declaratory ruling in this case sets forth sufficient facts to resolve the questions presented. In any event, inasmuch as the petitioner failed to raise this objection during the administrative process it has been waived. (Matter of Koren-Di Resta Constr. Co. v State Tax Commn., 138 AD2d 909 [3d Dept 1988].)
Accordingly, petitioner’s first and second causes of action should be, and hereby are, dismissed.
Petitioner’s third cause of action alleges that DOH lacked the power to issue a declaratory ruling that section 1104 (1) of the Public Health Law applied to DEP and DOH orders and regulations that were not specifically designed to protect the City’s water supply. Petitioner’s fourth and final cause of action alleges that DOH incorrectly interpreted section 1104 (1) in a way which could require the City to pay for all costs of constructing, maintaining and operating a sewage treatment plant, including a privately owned sewage treatment plant, in order to comply with DEP orders or regulations even where the costs are also necessary to comply with other existing statutory requirements and even where those statutory requirements concern public health and the environment in general and only incidentally benefit the City’s water supply. In part petitioner misstates the declaratory ruling.
In refutation to the petitioner’s position, respondents assert, as a complete defense to the petition, that the declaratory *254 ruling was issued pursuant to lawfully delegated powers and that its terms are rational and reasonable.
The construction given statutes and regulations by the agency responsible for their administration should be upheld if not irrational or unreasonable. (Matter of Howard v Wyman, 28 NY2d 434 [1971].) Deference to an agency’s construction of a statute is appropriate where the language used in the statute is special or technical and does not consist of common words of clear import or where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices. (Matter of New York State Assn. of Life Underwriters v New York State Banking Dept. 83 NY2d 353, 359-360, citing Matter of Howard v Wyman, supra.)
The respondent DOH is the agency responsible for the administration of article 11 of the Public Health Law or, more specifically, section 1104 (1) thereof. Moreover, inasmuch as DOH’s interpretation or application of said statute involves knowledge and understanding of underlying operational practices, DOH’s interpretation of Public Health Law § 1104 (1) should be upheld if not unreasonable or irrational. (Matter of New York State Assn. of Life Underwriters v New York State Banking Dept., supra; Matter of Howard v Wyman, supra.)
For Public Health Law § 1104 (1) to apply, the action in question must have as its purpose "the protection of a water supply from contamination”. Given the meaning of the word "contamination”, the declaratory ruling’s conclusion that "the phrase 'protection of a water supply from contamination’ should be construed broadly and need not be limited to those circumstances in which substances that endanger the public health are in, or threaten to enter, a water supply”,[4] is both rational and reasonable.
Contrary to the position taken by petitioner that the use of the term "public” in Public Health Law § 1104 (1) limits its applicability to governmentally owned facilities, the declaratory ruling concludes that the City’s cost-sharing obligation under Public Health Law § 1104 (1) is associated not only with "governmental-owned or leased sewage treatment plants” but with "public utilities” (those which provide services to a community), as well, but does not extend to those means of *255 removal or purification that are privately owned, and are not public utilities; this is neither irrational nor unreasonable.[5]
Petitioner contends that a distinction exists between sewage treatment designed to alleviate water quality problems and sewage treatment which simply enables new development, and *256 then faults the declaratory ruling for failing to recognize this distinction. However, the ruling directly addressed this point by stating, in relevant part, as follows: "For purposes of PHL 1104 (1), however, the rationale underlying the construction of a new STP or sewer system does not matter. What is significant is the impact that the City’s regulations will have on the construction, maintenance and operational costs associated with the new STP or sewer system”.
The ruling’s rationale that the factor triggering the City’s cost-sharing obligation is the terms of the City’s own regulations, and not the purpose for which the STP or sewer system was designed, is rational and reasonable.
Finally, since the County of Delaware’s interests are being adequately represented by the Coalition, of which it is a member, the County of Delaware’s motion to intervene is hereby denied.
Inasmuch as the challenged provisions of the declaratory ruling are both rational and reasonable, the petition is, in all respects, hereby dismissed. The court has examined all other arguments of the petitioner and finds them without merit.

. DOH ruled that section 1104 (1) applies only to DEP and DOH regulations or orders and not to actions taken by other agencies such as DEC. The City does not challenge this part of DOH’s ruling.

. Contrary to the allegations of the petitioner that the DOH rulings erroneously make petitioner liable generally for costs of construction and maintenance and operating costs of all privately owned plants (even those that only service private developments), the applicable DOH ruling states specifically that "it does not extend to those means of removal or purification of sewage that are privately-owned, and are not public utilities. ” (Emphasis added.)

. Petitioner’s initial memorandum submitted to DOH says only that it "may” have objections to DOH’s authority to issue a declaratory ruling, without further elaboration. This "wait and see whether we get a favorable decision” modality is not a sufficient procedural device to preserve an issue for judicial review.
In addition, petitioner in the instant proceeding does not even challenge the bulk of DOH’s declaratory ruling, but only that which is adverse to its position.

. See, Declaratory Ruling, at 4.

. See, Declaratory Ruling, at 7-8, reciting in pertinent part as follows:
" 'Public’ is defined as 'of or relating to a government * * * of, relating to or being in the service of the community * * * accessible to or shared by all the members of a community’ Webster’s New Collegiate Dictionary 932 (1973). Thus, the term 'public’ plainly includes those means of removal or purification of sewage that are owned or leased by governmental entities. In addition, to the extent that STPs or other means of removal or purification of sewage can be characterized as public utilities, they are also 'public’ for purposes of PHL sec. 1104(1), inasmuch as public utilities provide services to a community.
"A public utility is
"[a] privately owned and operated business * * * which is engaged in regularly supplying the public with some commodity or service which is of public consequence [and] need * * * The test for determining if a concern is a public utility is whether it has held itself out as ready, able and willing to serve the public. Black’s Law Dictionary 1232 (6th ed. 1990).
"STPs or other means of removal or purification of sewage which are 'sewage-works corporations’ (as defined in N.Y. Transportation Corporations Law sec. 115(1) (McKinney 1943) are obligated to provide the public with facilities for the collection, treatment and disposal of sewage at fair, reasonable and adequate rates. N.Y. Transportation Corporations Law sec. 121 (McKinney 1943). Such facilities are therefore public utilities. See, Suffolk Sanita[ry] Corp. v. Town Bd., 84 Misc. 2d 373, 374 (Sup. Ct., Suffolk County 1975).
"However, while the term 'public’ includes means of removal or purification of sewage that are governmentally-owned or leased, or public utilities, it does not extend to those means of removal or purification of sewage that are privately-owned, and are not public utilities.
"[FJrom an engineering standpoint, there is no difference between the phrase 'system of sewage’ and the phrase 'means of removal or purification of sewage.’ Nor do 'any’ and 'some public’, the respective modifiers of these phrases, create any difference in the context of PHL sec. 1104(1). In this context, the term 'any’ must be construed to mean 'any public’, with 'public’ construed in the aforementioned manner. Such a construction is required, inasmuch as a literal construction of 'any’ would violate the fundamental principle of statutory construction that all parts of a statute must be harmonized and given effect. N.Y. Statutes sec. 98 (McKinney 1971.) Were 'any’ to be read literally, it would encompass all systems of sewage. This would render the phrase 'public means of removal or purification of sewage’ a nullity, since 'public’ would be subsumed by 'any’, while, as noted above, 'system of sewerage’ and 'means of removal and purification of sewage’ are, from an engineering standpoint, synonymous. To avoid this result, 'any’ must be read to mean 'any public’, in accordance with the well-established principle that 'words absolute in themselves * * * may be qualified and restricted by other parts of the statute’ N.Y. Statutes sec. 113 (McKinney 1971).” (Emphasis added.)