NEW YORK TELEPHONE COMPANY, Respondent, *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Appellants.

In the Matter of NEW YORK TELEPHONE COMPANY, Petitioner, *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent, and CITY OF NEW YORK, Intervenor-Respondent.

Third Department, April 19, 1971.

*Davis, Polk & Wardwell* (*Lawrence E. Walsh, Thomas P. Griesa* and *Guy M. Struve* of counsel), for respondent and petitioner.

*Charles R. Gibson, George H. Kenny* and *Joseph J. Klovekorn* for appellant and respondent.

*J. Lee Rankin, Corporation Counsel* (*Eugene Margolis, Stanley Buchsbaum, Francis I. Howley, Louise Katz* and *Nina Goldstein* of counsel), for intervenor-respondent.

*Louis J. Lefkowitz, Attorney-General* (*Daniel M. Cohen, Ruth Kessler Toch* and *Samuel A. Hirshowitz* of counsel), *amicus curiæ*.

SIMONS, J. This is an appeal in the above-entitled action, from an order of the Supreme Court at Special Term, entered November 23, 1970 in Albany County, which granted plaintiff's motion for a preliminary injunction, and a proceeding under article 78 of the CPLR (transferred to the Appellate Division of the Supreme Court in the Third Judicial Department by order of the Supreme Court at Special Term, entered in Albany County) to review determinations of the Public Service Commission establishing rates to be charged for telephone service.

The company has instituted an injunction action to prevent enforcement of the commission's final rate order on the grounds that it is confiscatory (*Staten Is. Edison Corp.* v. *Maltbie*, 296 N. Y. 374). Special Term restrained enforcement of the commission's rates and also restrained interference with collection of the tariffs originally filed, subject to refund by the company if ultimately determined to be unjustified. Further, the company instituted a special proceeding under article 78 of the CPLR to review whether or not the ruling of the Public Service Commission was supported by substantial evidence. (*People ex rel. New York & Queens Gas Co.* v. *McCall*, 219 N. Y. 84, affd. 245 U. S. 345; *People ex rel. Cons. Water Co. of Utica* v. *Maltbie*, 275 N. Y. 357, app. dsmd. 303 U. S. 158; *Matter of Stork Rest.* v. *Boland*, 282 N. Y. 256; *Matter of City of Albany* v. *Public Serv. Comm.*, 282 App. Div. 554.)

On March 20, 1969 the company filed proposed tariff amendments which would increase annual revenues by $175,000,000, if accepted. The commission suspended these and hearings were scheduled to determine the reasonableness of the proposed rates. On January 20, 1970 the Hearing Commissioner recommended rate increases yielding annual revenues of $136,750,000 to the company. This was not accepted by the commission, but

it did acknowledge some increase was justified. Since the permissible statutory suspension period was expiring, it suggested the company submit a new filing for this amount which would be granted on an interim basis pending final determination. The company chose to follow this procedure and on February 26, 1970 an appropriate order was entered. Three months of experience with these new interim rates convinced the company that the return (it computes it at 5.78%) fell short of anticipations and that it was confiscatory. On June 16, 1970 the company petitioned to reopen the hearing, at which time it claimed that it would need $155,000,000 per year in revenues additional to the $136,000,000 allowed to receive the 7.88% return that the commission found reasonable. This petition was denied, the Commissioners refusing to consider figures based on 1970 experience, and a final order was issued by the commission fixing rates which would yield additional revenues of $104,965,000 annually. (The commission directed the company to refund to its customers the excessive revenue under the interim rate.) On July 13, 1970 the commission stayed this order pending a petition for rehearing. On September 1, 1970 the commission issued its opinion on reconsideration, modifying its original order and authorizing an additional increase in revenues of approximately $16,000,000 to allow the company to file for new rates yielding $120,797,000 in revenues annually. The commission order stated that any further changes would have to result from a new filing and not from continuation of the pending matter. These legal proceedings resulted.

The case comes to us in a curious posture. Two years after filing the proposed tariff, after 10,000 pages of technical testimony have been taken and evaluated, after motions for rehearing and reargument have been disposed of, and after all five Commissioners have agreed that the proposed tariff of March, 1969 is unreasonable and excessive, the company, by virtue of Special Term's order has imposed rates granting that very increase. The preliminary injunction of Special Term has not maintained the *status quo*. It has mandated by a decision on papers only, the complete relief requested by the company and unanimously denied by the commission. Now, the company claims the right to repeat the entire rate review process by trial *de novo* in an effort to justify that the $175,000,000 increase was not unreasonable and excessive. And it would prove this not to those trained and experienced in rate cases who were convinced otherwise, but to a single Judge at *nisi*

*prius* in a proceeding in which all the evidentiary rules and formalistic procedural devices of the courts apply instead of the advantages of statutory administrative hearings.

Special Term's order in the injunction action was based on the rule of *Staten Is. Edison Corp.* v. *Maltbie* (296 N. Y. 374, *supra*).

Before the *Staten Island* case, it had been the rule in this State that certiorari was a constitutionally sufficient legal vehicle for reviewing claims of confiscation in rate cases. (*People ex rel. Cons. Water Co. of Utica* v. *Maltbie*, 275 N. Y. 357, *supra*; *People ex rel. New York & Queens Gas Co.* v. *McCall*, 219 N. Y. 84, *supra*.) The *Staten Island* case for the first time in New York raised directly the question of whether a plenary action could be maintained in such a case. The utility asked for a review of the law and the facts in equity, relief not available in certiorari proceedings. The right was claimed on the basis of the Supreme Court ruling in *Ohio Val. Water Co.* v. *Ben Avon Borough* (253 U. S. 287), which held that due process of law required an independent judicial judgment of the law and the facts in cases claiming confiscation by State rate-making agencies. The Court of Appeals held that the equity action could be maintained, otherwise the utility had no adequate remedy at law under our certiorari rules and was denied due process.

The *Staten Island* case was decided by a 4–3 majority of the Court of Appeals in 1947. It has not been cited with approval by any New York appellate court since then. We think there are sound and persuasive reasons why we should not follow it now.

The holding of *Staten Island* was necessitated by strict adherence to the Supreme Court's rule in the *Ben Avon* case decided in 1920, a rule which that court itself has all but ignored and which it has cited only once in a rate case since it was handed down. In *St. Joseph's Stock Yards Co.* v. *United States* (298 U. S. 38, 53), the court modified the rule by stating: " this judicial duty to exercise an independent judgment does not require or justify disregard of the weight which may properly attach to findings upon hearing and evidence. On the contrary, the judicial duty is performed in light of the proceedings already had and may be greatly facilitated by the assembling and analysis of the facts in the course of the legislative determination  *  *  *  ' in a question of ratemaking there is a strong presumption in favor of the conclusions reached by an administrative body after a full hearing ' ".

This significant change makes the *Ben Avon* rule little more than the substantial evidence test in disguise. Subsequent decisions of the court have emasculated it. Thus, in *Railroad Comm. of Texas* v. *Rowan & Nichols Oil Co.* (310 U. S. 573, 581 [1940]) the court said: "the courts must not substitute their notions of expediency and fairness for those which have guided the agencies to whom the formulation and execution of policy have been entrusted" and in *Federal Power Comm.* v. *Natural Gas Pipeline Co.* (315 U. S. 575, 586 [1942]) it held, "Once a fair hearing has been given, proper findings made and other statutory requirements satisfied, the courts cannot intervene in the absence of a clear showing that the limits of due process have been overstepped. If the Commission's order, as applied to the facts before it and viewed in its entirety, produces no arbitrary result, our inquiry is at an end".

The Court of Appeals considered all of this at the time of its decision in *Staten Island*. These and other cases are forcefully analyzed in the dissent of Judge DESMOND (296 N. Y. 374, 384). Since then, nothing has happened to revitalize the doctrine and the atrophy has continued. In 1951 the Supreme Court reviewed a rate case in *Alabama Public Serv. Comm.* v. *Southern Ry. Co.* (341 U. S. 341, 348), and said: "The fact that review in the Alabama courts is limited to the record taken before the Commission presents no constitutional infirmity. *Washington ex rel. Oregon R. & N. Co.* v. *Fairchild*, 224 U. S. 510 (1912). And, whatever the scope of review of Commission findings when an alleged denial of constitutional rights is in issue, it is now settled that a utility has no right to relitigate factual questions on the ground that constitutional rights are involved." To the same effect are the holdings in *Baltimore & Ohio R. R. Co.* v. *United States* (105 F. Supp. 631, 633 [E. D. Mo., 1952], affd. on other grounds 345 U. S. 146 [1953]) and the most recent case on the subject in the Supreme Court, the *Permian Basin Area Rate Cases* (390 U. S. 747 [1968]).

In his treatise on Administrative Law, Professor Davis notes (vol. 4, § 29.09, p. 180): "The significant fact is that despite the lack of explicit overruling, the Supreme Court since 1936 has frequently refused to reassert the doctrine, even though numerous cases are finally disposed of by the lower federal courts in violation of the doctrine and even though at least eighteen state courts have specifically acknowledged some degree of violation of the doctrine." Other legal authorities have seriously questioned *Ben Avon* ever since it was announced. (2 Am. Jur. 2d, Administrative Law, § 695; Benjamin, Judicial

Review of Administrative Adjudication, 48 Col. L. Rev. 1 [1948]; Note, "The Ben Avon Rule", 28 N. Y. U. L. Rev. 417, 422 [1953].) According to Professor Davis, "the Ben Avon doctrine in the federal courts is dead". (*op. cit.,* p. 174). It is likely that Judge BREITEL signaled the *coup de grace* in New York courts when he observed that, although never overruled, the *Ben Avon* requirement of *de novo* review had been transformed into a substantial evidence test. (*Mount St. Mary's Hosp.* v. *Catherwood,* 26 N Y 2d 493.)

So much has been critically said or left unsaid about the underlying principle of *Ben Avon* by the courts and by authoritative writers that the strength and substance of it has been dissipated. Insofar as the *Staten Island* case relied on the rule of *Ben Avon,* the underpinning of the case has been removed. There is no longer any constitutional impediment to certiorari review in rate cases. Seemingly, the courts have come full circle. Prior to the *Staten Island* decision, New York courts held that due process was satisfied by certiorari review and prior to the *Ben Avon* decision, the Supreme Court held it was. (*San Diego Land & Town Co.* v. *National City,* 174 U. S. 739; *Southern Pacific Co.* v. *Campbell,* 230 U. S. 537.) Recent Supreme Court holdings are more consistent with these decisions than with the *Ben Avon* case.

Compelling legal and practical reasons support a rule that certiorari review satisfies constitutional standards in rate cases. Due process requires that a citizen be given access to the courts, but it does not give a vested right to any one form of procedure. (*Truax* v. *Corrigan,* 257 U. S. 312, 322; *Hurtado* v. *California,* 110 U. S. 516, 536.) "Once a full and sufficient hearing has been held, whether by court or administrative agency, 'due process does not require that a decision made by an appropriate tribunal shall be reviewable by another.' (*St. Joseph's Stock Yards Co.* v. *United States,* 298 U. S. 38, 77.)" (FULD, Ch. J. concurring in *Mount St. Mary's Hosp.* v. *Catherwood, supra,* p. 518.) The company's right of review by certiorari being sufficient to satisfy due process, it has an adequate remedy at law and no right to resort to equity.

Finally, it may be noted that lacking a constitutional basis for the rule, the policy reasons for not recognizing it are many and obvious. There should be an end to legal process. The courts should not be overburdened with parallel determination of disputes already decided by agencies of tested proficiency in the administrative field. The time consumed, the expense involved, the cumbersome procedures, and the loss of public

confidence in administrative agencies all militate against the maintenance of a dual system of determining the issues in rate cases.

The order entered November 23, 1970 should be reversed on the law, the preliminary injunction vacated and the complaint dismissed.

The review of the commission's order in the article 78 proceeding calls upon us to determine whether the ultimate result reached by the commission is supported by substantial evidence. If the determination of the commission on the facts finds support in the evidence, the court may not disturb it, or substitute its judgment for that of the commission absent a violation of law (CPLR 7803, subds. 3, 4; *People ex rel. New York & Queens Gas Co. v. McCall, supra; People ex rel. Cons. Water Co. of Utica v. Maltbie, supra*). " The business of rate making has been confided by the legislature to a body of experts with powers of inquiry and modification adequate to the task. We are not required either to approve or condemn the wisdom of the plan adopted." (CARDOZO, J.: *City of Rochester v. Rochester Gas & Elec. Corp.*, 233 N. Y. 39, 49; *Matter of Campo Corp. v. Feinberg*, 279 App. Div. 302.)

Central to the company's arguments is the contention that it was error by the commission to refuse to reopen the record to consider 1970 operating results before issuing its final order.

The record of the hearings was closed April 30, 1970. The order was issued July 1, 1970. On June 16, 1970 the company moved to reopen, requesting permission to submit the results for the three-month period, March–May, 1970. It subsequently asked to submit figures for March–August, 1970. These petitions claimed, that based upon actual results and using the commission's computations, the sum of $155,000,000 in addition to the $136,000,000 interim increase allowed, would be required to earn the 7.88% agreed rate of return. The results were occasioned by inflationary expenses and the company's large capital and labor expenses in 1969 and 1970. The rate had been fixed on the test year chosen by the company, 1968, as adjusted.

The commission has discretion to reopen a record or not (*United States v. Pierce Auto Frgt. Lines*, 327 U. S. 515, 534–535). Proceedings must come to an end sometime and if there is a reasonable basis for the commission's decision, there was no abuse of discretion. Rate making by its nature requires predicting future results based upon known data. A determination based upon a reasonable prediction supported by the evidence in the record is valid even though it may subsequently

be proven inaccurate (*People ex rel. Cons. Water Co. of Utica v. Maltbie, supra*). The commission could, and did, give weight to economic history between the time of the original filing in March, 1969 and the final order of September, 1970. It was not required to postpone the proceeding indefinitely to see what eventuated from the imposition of the interim orders. The record demonstrates that inflation was considered and evaluated by the commission's experts as well as its effect on the cost of debt and capital expenditures. A finding based upon that opinion was acceptable.

It is the company's position that the data they accumulated in 1970 proved conclusively that the commission's order was erroneous. Even if these 1970 results submitted by the company demonstrate the contentions claimed, this does not mean the commission abused its discretion in refusing to consider them. If there is no assurance that the 12-month test year of 1968, chosen by the company, was representative, after adjustments, there is no assurance that partial figures prepared for 1969 and 1970 are representative. On a motion to reopen to submit new results, the company has the burden of establishing that intervening events have destroyed the force of the prior evidence (*People ex rel. Cons. Water Co. of Utica v. Maltbie, supra*). The commission was justified in refusing to consider the returns. They contained unusual and extensive costs brought about by a sudden and intensive effort to upgrade plant and equipment. (A service case was pending against the company.) The delay in submitting 1970 figures, although necessitated by circumstances, is all the more reason for the commission's decision not to reopen. It is not obligated to accept figures without giving the staff an opportunity to investigate them. Fairness would require just the opposite.[1]

The untimeliness of the offers, the possibility of distortion by the limited periods involved, and the lack of opportunity to rebut the figures, all justified the commission's exercise of discretion. There is a sound distinction between justifying and adjusting test figures originally submitted and offering a completely new set of test statistics during a pending proceeding. Holding the hearings open to update the figures can become endless. At some point in such a continuum, the filing pro-

---

1. It is interesting that during the hearings, some 1969 figures were received by the Hearing Commissioner. Upon objection of the staff attorney, "separation studies" showing the allocation of income and expenses between intra and interstate operations were not. The staff attorney agreed to receive these if the company stipulated to an extension of the suspension period while the staff had a chance to investigate them. The company refused.

cedures set out in the Public Service Law are evaded and nullified (§ 92, subd. 2; see, also, *Panhandle Eastern Pipe Line Co.* v. *Federal Power Comm.,* 236 F. 2d 606).

The argument of the company that Public Service Law (§ 114), as construed in *Matter of Bronx Gas & Elec. Co.* v. *Maltbie* (271 N. Y. 364), mandates a reopening of the record to consider the effect of the interim rate on earnings is not warranted.[2] The court noted in that case that the statute was designed to overcome the difficulties apparent from the decision in *Prendergast* v. *New York Tel. Co.* (262 U. S. 43), which for all practical purposes, prohibited temporary rates during the extended period of a rate hearing. Under section 114, temporary rates are fixed on limited data and if, in fact, these rates are insufficient upon establishment of the final rate, the company is allowed to recoup. Establishment of a right to recoup losses sustained under the temporary rates is a far different thing from granting a right to reopen and to use the results as affirmative evidence that the final rate is inadequate on the basis of new data accumulated after the test year. Neither Public Service Law (§ 114) nor the case law suggests any such result was intended by the Legislature. The interim rates were considered by the commission. They were found to be too high.

We have considered additional errors claimed by the company with respect to the treatment accorded the company's debt, the tax consequences of its position with American Telephone and Telegraph and the claimed failure to grant consideration for attrition resulting from the cost of replacing capital equipment. While some may differ in their views or treatment of various parts of the case, we are satisfied that on the record proper consideration was given and that there is substantial evidence upon which the commission could find as it did that the rates approved were just and reasonable. (*Matter of City of New York* v. *Public Serv. Comm.,* 17 A D 2d 581, mot. for lv. to app. den. 13 N Y 2d 594; *Matter of Long Is. Light. Co.* v. *Maltbie,* 249 App. Div. 918; see, also, *Federal Power Comm.* v. *Hope Gas Co.,* 320 U. S. 591, 602.)

The Public Service Law was designed and enacted with the paramount purpose of protecting the rights of the public. (*People ex rel. Delaware & Hudson Co.* v. *Stevens,* 197 N. Y. 1.) This must be considered in balancing the interests of the parties.

2. It is doubtful that the rate of February, 1970 was established under section 114. It appears it was the result of a new filing permitted by the commission order of February 26, 1970.

It imposes a heavy burden on the company to establish the ordinary equitable principles required before a preliminary injunction is granted; probability of success (*Public Serv. Comm. of Wisc.* v. *Wisconsin Tel. Co.,* 289 U. S. 67), irreparable injury for which the company has no adequate legal remedy (*Savage* v. *Allen,* 54 N. Y. 458), and avoidance of the general rule prohibiting preliminary injunctions which grant the full relief sought (*Bachman* v. *Harrington,* 184 N. Y. 458). The company has not met this burden.

The determinations of the Public Service Commission should be confirmed and the petition dismissed.

STALEY, JR., J. P., GREENBLOTT, COOKE and SWEENEY, JJ., concur.

Order entered November 23, 1970, reversed, on the law; preliminary injunction vacated and complaint dismissed, with costs to appellant Public Service Commission.

Determinations confirmed and petition dismissed, with costs to respondent Public Service Commission.

