UNITED INTER–MOUNTAIN TELE-
PHONE COMPANY, Appellant,

v.

PUBLIC SERVICE COMMISSION of the
State of Tennessee, Appellee.

Supreme Court of Tennessee.

May 23, 1977.

Rehearing Denied Sept. 12, 1977.

John R. Hoffman, Gen. Counsel, Bristol, Lon P. MacFarland, MacFarland, Colley, Blank & Jack, Columbia, W. W. Hill, Jr., Vice President-Rate Counsel, Kansas City, Mo., for appellant.

Eugene W. Ward, Gen. Counsel, T. E. Midyett, Jr., Asst. Gen. Counsel, Nashville, for appellee.

## OPINION

HENRY, Justice.

This is a telephone rate case.

United Inter-Mountain Telephone Company is a public utility incorporated under the laws of the Commonwealth of Virginia and domesticated in Tennessee. It is engaged in furnishing telephone communication in franchise areas in East Tennessee and Southwest Virginia. It is a wholly owned subsidiary of United Telecommunications, Inc. UTI has a number of subsidiary corporate entities, including United Computing Systems, Inc., which provides computer service to the group, North Electric Company, which manufactures and sells telephone equipment to the telephone subsidiary companies, United System Service Company, which provides management, professional, financial, technical and advisory services to all subsidiaries as well as to the parent company (UTI), and a total of twenty-four telephone subsidiaries, including UIMT. UTI apparently is operated as one economic entity.

On July 17, 1975 UIMT filed its petition before the Public Service Commission seeking a rate increase. In substance, the petition alleged the monetary cost of providing services, extending facilities, and generally operating under its existing rate structure; asserted that the existing structure was inadequate and resulted in earnings that were insufficient to attract investment capital; and contended that the continuation of this rate structure would result in confiscation of petitioner's property. A proposed rate schedule and other pertinent documents were filed with the petition.

The existing rate structure was established by the Commission in July 1974, and was based upon the results of operations for a period ending 30 June 1973, with increases being authorized in increments. The July 1974 order found that UIMT was entitled to an 8.9% return on the rate base as found by the Commission. The present application is based upon a test period of eighteen months ending 31 December 1974, and seeks a return of 14% on common equity and 9.78% on total capital.

The Public Service Commission, after hearing extensive proof and considering massive documentary evidence, fixed a rate of return of 9.5%, to be applied against a rate base of $73,638,621.00, and directed UIMT to file with the Commission a proposed tariff designed to produce additional annual revenue of $746,304.00. This tariff was seasonably filed by UIMT, approved by the Commission, and went into effect on 1 February 1976.

UIMT filed its complaint and petition for certiorari in the Chancery Court at Nashville, praying that the rates as established by the Commission be declared to be confiscatory, that the court exercise its independent judgment upon the matter, and that it be granted assorted kindred relief.

The entire record before the Commission was certified to the Chancery Court, and that Court, after receiving substantial testimony in the form of depositions, affidavits and testimony adduced in open court, entered a final decree dismissing certiorari and affirming the action of the Public Service Commission. This appeal ensued.

## I.

The complaint and petition for certiorari filed in the Chancery Court represent a reliance upon Sec. 65–220, et seq. T.C.A., which specifically authorize such procedure and spell out the specifics and scope of the review. Under this statute this Court has held that in such cases it was proper for the Court to hear additional evidence. *Southern Bell T. & T. Co. v. Tennessee Pub. Serv. Com'n*, 202 Tenn. 465, 304 S.W.2d 640 (1957). This statutory scheme for the review of the action of the Public Service Commission was adopted in 1953.

In 1974 the General Assembly adopted the Uniform Administrative Procedures Act (Ch. 725, Acts 1974), a comprehensive scheme specifically designated as "remedial legislation designed to clarify and bring uniformity to the procedure of state administrative agencies and judicial review of their determination." Sec. 4–525(a). The legislative intent that this act apply to *all* administrative boards and agencies is unmistakably clear.

Aside from the self-evident overall import and intention of the act, there are specific provisions which permit no doubt that this act applies to the Public Service Commission.

Sec. 4–508(a), T.C.A. contains a definition of the word "Agency":

"Agency" means each state board, *commission,* committee, department, officer, or any other unit of state government authorized or required by any statute or constitutional provision to make rules or to determine *contested cases.* (Emphasis supplied).

It would be difficult to compose a more sweeping and all-inclusive definition.

The following subsection, Sec. 4–508(b), defines "contested case", in pertinent part, as follows:

"Contested case" means a proceeding, including a declaratory proceeding in which the legal rights, duties or privileges of a party are required by any statute or constitutional provision to be determined by an agency after an opportunity for a hearing. Such proceeding shall include, but not be restricted to *rate making;* price fixing; *granting certificates of convenience and necessity;* . . . (Emphasis supplied).

The emphasized language points unerringly to the Public Service Commission, it being the only state agency concerned with *rate making* and *granting certificates of convenience and necessity.*

Moreover, Section 4–525(b) contains this language:

In any other case of conflict between §§ 4–507—4–527 and any procedural administrative statute, whether general or specific, §§ 4–507—4–527 shall control, however, compliance with the procedures prescribed by this chapter does not obviate the necessity of complying with procedures prescribed by other provisions of Tennessee Code Annotated.

■ We hold that Sec. 65–220, et seq., T.C.A. have been superseded by the Uniform Administrative Procedures Act.

■ Under the UAPA, "the *only* available method of judicial review", (emphasis supplied), in a "contested case", Sec. 4–523(a), is by petition for review [1] filed in the Chancery Court. Sec. 4–523(b).

In the Chancery Court:

The review shall be conducted by the court without a jury and shall be *confined to the record.* In cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court. (Emphasis supplied). Sec. 4–523(g), T.C.A.

1. We emphasize that review is not by petition for certiorari, but by petition for review under the Administrative Procedures Act. Rules governing certiorari procedure are not relevant.

■ The Chancery Court—and this Court on appeal—may affirm the decision of the Commission or remand for further proceedings. It may reverse or modify if the rights of the petitioner have been prejudiced because the decision is:

(1) in violation of constitutional or statutory provisions;
(2) in excess of the statutory authority of the agency;
(3) made upon unlawful procedure;
(4) arbitrary or capricious or characterized by *abuse of discretion* or clearly *unwarranted exercise of discretion*; (emphasis supplied), or
(5) unsupported by evidence which is both *substantial and material* in the light of the entire record. (Emphasis supplied). Sec. 4–523(h), T.C.A.

■ Thus the Act creates a *substantial and material* evidence rule, and after so doing, emphasizes the importance and solemnity of the action taken by the Commission by adding at the conclusion of subsection (5) the following:

In determining the substantiability of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court *shall not substitute its judgment for that of the agency* as to the weight of the evidence on questions of fact. (Emphasis supplied). Sec. 4–523(h)(5), T.C.A.

■ The impact of the Administrative Procedures Act on the review of the decisions made by state boards, commissions and agencies, including the Public Service Commission, is massive. It casts upon the Commission the heavy burden of a sound, reasoned, and judicious approach in the exercise of its jurisdiction. It casts upon petitioners before the Commission the duty and responsibility of bringing forward their entire cases in Commission hearings, with the full realization that gone are the days of the bifurcated hearings before the Commission and in Chancery Court.

This case points up the wisdom of the statute. After voluminous proof had been taken before the Commission, the Chancery Court, in deciding the case, considered massive testimony not presented to the Commission. This operates to downgrade the Commission and, in a vary real sense, reduces it to the level of mere hearing examiners, trial referees or high-level masters, charged only with the duty of making preliminary findings and temporary decisions preparatory to a main trial in the Chancery Court. This deprives litigants and the consuming public of a meaningful hearing before a commission, with expertise in the field, aided by technicians knowledgeable and skilled in the preparation and analysis of supporting documentary proof in areas of great complexity.

■ We do not think this case is in a posture for appellate review. The Commission has had no opportunity to sit in judgment on substantial portions of the testimony. The Chancellor has considered testimony that should not even be in the record. Normally we would—as we shall in the future—decide this appeal solely on the basis of the proof before the Commission; however, in this period of transition from an old and established procedure, and in a case where both counsel and the Chancellor, proceeded under the old statutes, we feel that the interest of justice demands a remand to the Public Service Commission. The Chancellor has that authority, Sec. 4–523(h); so does this Court.

## II.

For the guidance of counsel, the Commission, and the Chancellor, we comment upon two additional matters.

Aside from the rate of return on rate base, the only substantial remaining area of dispute involves an item of $447,209.00 representing an adjustment to the income available for fixed charges resulting from a tax savings produced by the filing of a consolidated federal income tax return by UTI.

As to the question of the income tax allocation and its corresponding effect on the rate base, we invite attention to the decision of this Court in *Tennessee Public Service Commission v. Nashville Gas Com-*

*pany*, 551 S.W.2d 315 (Opinion filed March 21, 1977).

There we dealt with a parent corporation and its wholly owned subsidiary, which applied to the Public Service Commission for a rate increase. The Commission authorized tariffs to produce additional revenue, subject to an offset or reduction of revenue received by the parent corporation from its direct industrial sales within the Nashville area. The Chancellor held that the Commission erred in taking into consideration this "imputation credit". In reversing the Chancellor and upholding the Commission we said:

> . . . a regulatory body, such as the Public Service Commission, is not bound in all instances to observe corporate charters and the form of corporate structure or stock ownership in regulating a public utility, and in fixing fair and reasonable rates for its operations. The filing of consolidated reports by parent and subsidiary corporations, both for tax purposes and regulatory purposes, is so commonplace as to be completely familiar in modern law and practice. Considerations of "piercing the veil", which are involved in cases involving tort, misconduct or fraud, are largely irrelevant in the regulatory and revenue fields. In order for taxing authorities to obtain accurate information as to revenues and expenses, the filing of consolidated tax returns by affiliated corporations is frequently required, and rate-making and regulatory bodies frequently can and do consider entire operating systems of utility companies in determining, from the standpoint both of the regulated carrier and the consuming public, fair and reasonable rates of return.

>     \*      \*      \*      \*      \*      \*

> . . . it seems to us that the subsidiary in actuality is nothing more than an operating division of the parent. Management decisions, for legitimate reasons, may have placed the industrial sales and the facilities requisite therefor in the parent company, but this does not prevent a public regulatory body from considering

them as part of one operating system and taking them into account in determining the proper rate base and rate structure of the subsidiary. Otherwise, it would be a simple matter, through the device of holding companies, spin-offs, or other corporate arrangements, to place the cream of a utility market in the hands of a parent or an affiliate, and to strip the marketing area of a regulatory subsidiary of its most profitable customers. *See Industrial Gas Co. v. Public Utilities Comm'n of Ohio*, 135 Ohio 408, 21 N.E.2d 166 (1939).

■ The rationale of *Nashville Gas Company* is applicable to this case. Upon the authority of that case and of *Federal Power Commission v. United Gas Pipe Line Co.*, 393 U.S. 71, 89 S.Ct. 55, 21 L.Ed.2d 55 (1968), relied upon by the Chancellor, we sustain so much of the Public Service Commission's order and Chancellor's decree as holds that the adjustment to UIMT's income for federal income tax savings resulting from the filing of a consolidated tax return is proper, and that UIMT's federal income tax expense should reflect a proportionate share of such savings. See also *Federal Power Commission v. United Gas Pipe Line Company*, 386 U.S. 237, 87 S.Ct. 1003, 18 L.Ed.2d 18 (1967). The facts upon which this legal conclusion is reached are not at issue.

This removes this as an issue on remand. Also removed is the rate base established by the Commission and accepted by UIMT, in the amount of $73,638,621.00.

### III.

Counsel for the petitioner relies and argues most persuasively the applicability of the rule announced in *Ohio Valley Water Co. v. Ben Avon Borough*, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908 (1920). We discussed the *Ben Avon* rule in *Public Service Commission v. General Telephone Co.*, 555 S.W.2d 395 (Opinion released simultaneously with this opinion).

There we pointed out that, while *Ben Avon* has not been overruled explicitly, sub-

sequent decisions by the Supreme Court of the United States have not applied the "independent judgment" rule in rate cases alleging confiscation, applying instead the substantial evidence test. Thus, it would appear that *Ben Avon* has been overruled *sub silentio.* In our opinion in *General Telephone* we stated:

We conclude that the Supreme Court has abandoned the independent judgment rule of *Ben Avon* and that the substantial evidence test satisfies federal constitutional law. We reject the independent judgment rule as controlling Tennessee constitutional law and hold that the scope of review articulated in T.C.A. § 4–523(h) provides adequate standards within constitutional limits, for judicial determination of the issue of confiscation in rate cases.

■■■ Notwithstanding the demise of *Ben Avon,* we point out that, should the Commission establish a rate which is confiscatory in character, such action would be an abuse or unwarranted exercise of discretion under Sec. 4–523(h)(4) and proper relief would be obtainable in the court. However, this determination would be on the basis of the substantial and material evidence rule qualified by the admonition that "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Sec. 4–523(h)(5).

We specifically call counsel's attention to Rules 1 and 5 of this Court, and statutes referenced therein, relating to abridgement of the record. Much of the record in this case might well have been omitted. If and when this case is again presented for appellate review, the entire record may be filed if counsel consider it necessary, but the pertinent parts should be designated and, where feasible, bound separately. The law of the case has been fully and effectively briefed. Any future appeal should be re-briefed, from a standpoint of the facts, and that should be restricted to the only issue left in the case, viz. the rate established or to be established by the Commission.

On remand the record before the Commission will consist of the entire record made there and in the Chancery Court, together with such other evidence as the Commission may deem proper.

Except as herein affirmed, the judgment of the Chancellor is vacated.

Affirmed in part; vacated in part; remanded.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.

## OPINION ON PETITION TO REHEAR

HENRY, Justice.

United Inter-Mountain Telephone Company has lodged with the Court a courteous, dignified and vigorous petition to rehear.

Its first, and primary, insistence is that the Court erred in the conclusion reached in Section II of the opinion, relating to the adjustment to income resulting from a tax savings produced by the filing of a consolidated federal income tax return by UTI. Specifically UIMT asserts that our action in holding that "[t]he facts upon which this legal conclusion is reached are not at issue" is erroneous.

Perhaps we should have said "no longer at issue."

The record shows that (1) a tax savings was realized by filing a consolidated return and (2) that a reasonable and acceptable method was used to allocate this saving.

The Chancellor found, in this regard, that the PSC took the ratio of the capital of UIMT ($137,569,000) to that of UTI ($2,116,761) and, on that basis, made the allocation of 6.5% against the interest expense of the entire system, or $447,209.00, to the Tennessee *intrastate* operations. We find this to be a fair and reasonable basis.

We adhere to our original view that this is no longer an issue and, on remand, this phase of the controversy is settled.

UIMT further insists that it falls within an exception set forth in *Tennessee Public Service Commission v. Nashville Gas Co.,* 551 S.W.2d 315 (Tenn.1977). Its view of the exception is that it operates to require "[a] separate interstate from intrastate opera-

tions (and a separation of regulated from non-regulated operation)."

We are not confronted with a "regulated" versus a "non-regulated" utility controversy. Again, our basic concern was a proper method of allocating a portion of a tax savings from a parent company to a subsidiary subject to the regulation of the Public Service Commission.

We adhere to our reliance upon *Nashville Gas.* The exception noted therein has no relevance to the instant controversy.

UIMT takes strong issue with our holding that "we shall in the future decide this appeal solely on the basis of the proof before the Commission."

This translates into a simple holding that we will heed the mandate of the legislature as set forth in Section 4–523(g), T.C.A. Under this section review in chancery is "confined to the record", and proof in chancery is permissible only "[i]n cases of alleged irregularities in procedure before the agency, not shown in the record."

Counsel argues that our opinion is "in direct conflict with prior holdings of this Court." Perhaps so. Our prior pronouncements and precedents have been preempted by a new statutory scheme, under which *all* proof, with the exception of "irregularities", *must* first be presented to the Public Service Commission.

The petition to rehear is respectfully denied.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.