PUBLIC SERVICE COMMISSION of the State of Tennessee, Z. D. Atkins, Cayce L. Pentecost and Robert N. Clement, Appellants,

v.

GENERAL TELEPHONE CO. OF the SOUTHEAST, Appellee.

Supreme Court of Tennessee.

May 23, 1977.

Eugene W. Ward, Gen. Counsel, T. E. Midyett, Jr., Asst. Gen. Counsel, Nashville, for appellants.

Lon P. MacFarland, MacFarland, Colley, Blank & Jack, Columbia, W. C. Fleming, Associate Gen. Counsel, Ward W. Wueste, Jr., Gen. Counsel, Durham, N. C., for appellee.

## OPINION

FONES, Justice.

Tennessee Public Service Commission (PSC) appeals from a decree of the Chancery Court of Davidson County directing the Commission to fix rates that would allow General Telephone Company of the Southeast (GT) to earn a minimum of twelve (12%) percent on its common equity, based upon a finding that any rate below that figure would be confiscatory.

### I.

The threshold issue asserted by appellant is that the Uniform Administrative Procedures Act (UAPA), codified as T.C.A. §§ 4–501, et seq. governs the procedure for PSC hearings and the review of its decisions and that where the constitutional issue of confiscation is presented, in rate cases, the scope of review prescribed in T.C.A. § 4–523(h) satisfies the requirements of due process, including the claim of confiscation. Appellant urges this Court to reexamine the independent judgment rule announced by the United States Supreme Court in

*Ohio Valley Company v. Ben Avon Borough,* 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908 (1920), and adopted in *Southern Continental Telephone Company, etc. v. Railroad and Public Utilities Commission of State of Tennessee et al.,* 199 Tenn. 122, 285 S.W.2d 115 (1955), and *Southern Bell Telephone and Telegraph Company v. Tennessee Public Service Commission et al.,* 202 Tenn. 465, 304 S.W.2d 640 (1957).

The substance of appellant's contention is that subsequent cases of the United States Supreme Court have explained and modified *Ben Avon* to such an extent that the so-called independent judgment rule has been abandoned and should be explicitly overruled.

General Telephone's reply is that *Ben Avon* has not been overruled or eroded and that when the constitutional issue of confiscation is presented, the UAPA has not affected the independent judgment rule. Also, it is urged that PSC affirmatively admitted in the Chancery Court that GT was entitled to that court's independent judgment of the facts and is precluded by Supreme Court Rule 14(4) from raising the question in this Court.

## II.

Addressing the latter contention first, we are of the opinion that the issue of the appropriate scope of review in rate cases is properly before the court for decision by virtue of the state of the pleadings of both parties in the Chancery Court and of the compelling necessity of resolving this question, presented by the legislative enactment in 1974 of the UAPA.

General Telephone sought a review of the decision of the PSC in the Chancery Court by filing an original bill of complaint and petition for certiorari. After reciting the facts, GT asserted that the Commission's order of October 10, 1975, was arbitrary, capricious and confiscatory, in violation of Article I, § 8, and Article I, § 21 of the Tennessee Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. Its pleading continues as follows:

"Plaintiff avers that not only does it have a right to apply to this Court for relief because of the constitutional issue involved, and because the Common law writ of certiorari is always available in such cases, but it also is expressly given such right under the terms of Chapter 162 of the Public Acts of 1953, as amended by Chapter 46 of the Acts of 1969, (Tennessee Code Annotated, Section 65–220 through 65–229). The act provides for a judicial review of defendant Commission's action in rate proceedings by 'petition for certiorari to the Chancery Court of Davidson County, Tennessee, within sixty (60) days after the date of entry of the said final Order of the Commission.' "

After quoting in full T.C.A. § 65–229 entitled Scope of Review by the Court, GT asserts that it is entitled to a review of both the law and the facts under the constitutional issues raised and also as a petitioner for certiorari as provided in T.C.A. §§ 65–220—65–229.

Public Service Commission responded to these allegations by admitting that the common law writ of certiorari was available as well as the review provided in T.C.A. §§ 65–220—65–229, "but would show that maybe the same is the procedure as set forth in T.C.A. § 4–523."

In *United Inter-Mountain Telephone Company v. Public Service Commission,* 555 S.W.2d 389 (Tenn.1977), released simultaneously with this opinion, we have held United Telephone's reliance upon T.C.A. § 65–220 et seq. was misplaced and that the UAPA has entirely superseded these sections in title 65 and that the only method of judicial review of the decisions of the PSC is the petition for review pursuant to T.C.A. § 4–523.

Our reasons for so holding are stated at length in that opinion and will not be repeated here.

The *Ben Avon* independent judgment rule has provided a third standard of review available in rate cases, where confiscation was alleged. Common law certiorari, and

statutory review, formerly T.C.A. § 65–220 et seq. (now T.C.A. § 4–523), each with its standards of judicial review have also been available. All three have been consistently asserted in rate cases, as here, since *Southern Continental Telephone Company v. R & P U C et al., supra,* in 1955.

The time has come to reexamine the judicial review of rate cases and determine whether or not this third standard of review is necessary to afford a fair opportunity for adjudication by a judicial tribunal of the constitutional issue posed by an allegation of confiscation.

We begin by examining the present status of the *Ben Avon* independent judgment rule in the federal courts and the courts of our sister states.

### III.

*Ben Avon* involved a review of a decision of the Public Service Commission of Pennsylvania ordering a schedule of rates, wherein the fair value of the water company's property for ratemaking purposes was the disputed issue. The water company asserted that the effect of the Commission's order was a confiscation of its property. Upon appeal, the Pennsylvania trial court differed with the Commission as to the valuation of some items of property, but the Supreme Court of Pennsylvania reversed and reinstated the order of the Commission, concluding that the trial court had merely substituted its judgment for that of the Commission.

The United States Supreme Court reversed the State Supreme Court. As we construe the decision, the Court held that the trial court had construed the scope of review provided by the Public Service Company Act of Pennsylvania to authorize an appropriate judicial review of the constitutional issue of confiscation, but that the court of last resort's opinion construed the review section of the Act so as to deny the water company a "fair opportunity" for submitting a constitutional issue for judicial determination.

The review sections of the Pennsylvania Public Service Law provided in one part that the decisions and orders of the Commission, "shall be and remain conclusive upon all parties affected thereby unless set aside, annulled or modified in an appeal taken as provided in this act." Another section provided that on appeal the court should "determine whether or not the order appealed from is reasonable and in conformity with the law." Implicit in the Supreme Court's opinion is the fact that such a scope of review is subject to a wide variety of interpretations and that the one evinced by the court of last resort in Pennsylvania was too narrow to provide a fair opportunity for appropriate judicial review of an alleged constitutional deprivation.

We think the following quote supports our analysis of the opinion:

"Looking at the entire opinion we are compelled to conclude that the Supreme Court interpreted the statute as withholding from the courts power to determine the question of confiscation according to their own independent judgment when the action of the commission comes to be considered on appeal.

The order here involved prescribed a complete schedule of maximum future rates and was legislative in character. (citations omitted.) In all such cases, if the owner claims confiscation of his property will result, the state must provide a fair opportunity for submitting that issue to a judicial tribunal for determination upon its own independent judgment as to both law and facts; otherwise the order is void because [it is] in conflict with the due process clause, Fourteenth Amendment.[1]

. . . . .

The Supreme Court of Pennsylvania has not ruled upon effect or meaning of section 31, or expressed any view concerning it.

. . . . .

But for the opinion of the Supreme Court in the present cause, this would

---

1. This sentence is extensively quoted as the holding of the case.

seem to empower the Superior Court judicially to hear and determine all objections to an order on appeal and to make its jurisdiction in respect thereto exclusive. Of this the latter court apparently entertained no doubt; and certainly counsel did not fatally err by adopting that view, whatever meaning finally may be attributed to section 31.

Without doubt the duties of the courts upon appeals under the act are judicial in character—not legislative, as in *Prentis v. Atlantic Coast Line,* [211 U.S. 210, 29 Sup.Ct. 67, 53 L.Ed. 150]. This is not disputed; but their jurisdiction, as ruled by the Supreme Court, stopped short of what must be plainly intrusted to some court in order that there may be due process of law.

Plaintiff in error has not had proper opportunity for an adequate judicial hearing as to confiscation; and unless such an opportunity is now available, and can be definitely indicated by the court below in the exercise of its power finally to construe laws of the state (including of course section 31), the challenged order is invalid." 253 U.S. at 289, 290, 291 40 S.Ct. at 528.

But for the use of the phraseology, "for determination upon its own independent judgment as to both law and facts" *Ben Avon* would be in harmony with prior and subsequent decisions of the United States Supreme Court. The judicial confusion spawned by the language has been monumental. It has resulted in some decisions to the effect that the bare allegation of confiscation triggers the constitutional issue of deprivation of property without due process of law and commands a broad scope of review equivalent to a de novo trial. Such decisions are patently beyond the authority of the judiciary in reviewing for constitutional infirmities in legislative enactments or the decisions of legislative agencies. See *In re Cumberland Power Co.,* 147 Tenn. 504, 249 S.W. 818 (1922) and *Hoover Motor Exp. Co., Inc. et al. v. Railroad & Public Utilities Commission et al.,* 195 Tenn. 593, 261 S.W.2d 233 (1953). We are also persuaded that the *Ben Avon* court did not view its

decision as a departure from prior cases on the subject.

Sixteen (16) years after *Ben Avon* the Supreme Court extensively addressed the scope of judicial review upon the constitutional issue of confiscation. In *St. Joseph Stock Yards Company v. United States,* 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033 (1936), the Secretary of Agriculture had prescribed maximum rates that could be charged by the St. Joseph Company for its services pursuant to the provisions of the Packers and Stockyards Act of 1921.

The rates fixed by the Secretary of Agriculture were alleged by the company to be so low as to amount to a confiscation of its substantial capital investment. Upon review in the Supreme Court the St. Joseph Company complained that the district court had failed to exercise its independent judgment upon the facts, relying upon *Ben Avon.* The substance of the Court's response to reliance upon the independent judgment rule begins with the following:

"The court does not sit as a board of revision to substitute its judgment for that of the Legislature or its agents as to matters within the province of either. (citations omitted.) When the Legislature itself acts within the broad field of legislative discretion, its determinations are conclusive. When the Legislature appoints an agent to act within that sphere of legislative authority, it may endow the agent with power to make findings of fact which are conclusive, provided the requirements of due process which are specially applicable to such an agency are met, as in according a fair hearing and acting upon evidence and not arbitrarily. (citations omitted.) In such cases the judicial inquiry into the facts goes no further than to ascertain whether there is evidence to support the findings, and the question of the weight of the evidence in determining issues of fact lies with the legislative agency acting within its statutory authority." 298 U.S. at 51, 56 S.Ct. at 725.

Chief Justice Hughes, writing for the Court, then observes that the constitutional limits to the rate-making power are the deprivation of property without due process of law and that like any other legislative action it is necessarily subject to judicial review by courts of competent jurisdiction to the end that the Constitution as the supreme law of the land may be maintained. Specifically turning to the judicial role in such circumstances the Court said:

"But this judicial duty to exercise an independent judgment does not require or justify disregard of the weight which may properly attach to findings upon hearing and evidence. On the contrary, the judicial duty is performed in the light of the proceedings already had and may be greatly facilitated by the assembling and analysis of the facts in the course of the legislative determination. Judicial judgment may be none the less appropriately independent because informed and aided by the sifting procedure of an expert legislative agency. Moreover, as the question is whether the legislative action has passed beyond the lowest limit of the permitted zone of reasonableness into the forbidden reaches of confiscation, judicial scrutiny must of necessity take into account the entire legislative process, including the reasoning and findings upon which the legislative action rests. We have said that 'in a question of rate-making there is a strong presumption in favor of the conclusions reached by an experienced administrative body after a full hearing.' *Darnell v. Edwards*, 244 U.S. 564, 569, 37 S.Ct. 701, 703, 61 L.Ed. 1317. The established principle which guides the court in the exercise of its judgment on the entire case is that the complaining party carries the burden of making a convincing showing and that the court will not interfere with the exercise of the rate-making power unless confiscation is

clearly established. (citations omitted.)" 298 U.S. at 53, 56 S.Ct. at 726.

While paying some lip service to the expression "independent judgment" the Court circumscribed the limits of judicial review by these caveats: (1) the Court should not substitute its judgment for that of the legislative agency; (2) the Legislature may endow an agency or commission with the power to make findings of fact which are conclusive, provided due process requirements are met; (3) the weighing of evidence lies with the legislative agency and judicial inquiry ends with an ascertainment that there is evidence to support the findings; (4) courts will not interfere with the rate-making power unless confiscation is clearly established and (5) confiscation is not established unless the rates prescribed are beyond the lowest limits of the permitted zone of reasonableness.

In our opinion, these limitations on judicial review are antagonistic to the concept of the independent judgment rule that has evolved from *Ben Avon*.

No significant decision of the United States Supreme Court since *St. Joseph* has utilized the independent judgment rule, although many have involved alleged confiscation.[2] Most leading administrative law authorities agree that *Ben Avon* has been overruled *sub silentio*.[3] The following quotation from *Railroad Comm'n of Texas v. Rowan & Nichols*, an oil and gas conservation case in which agency action was alleged by producers to be confiscatory, could be characterized as the death knell of the doctrine:

"A controversy like this always calls for fresh reminder that courts must not substitute their notions of expediency and fairness for those which have guided the agencies to whom the formulation and execution of policy have been entrusted.

---

2. See e. g. *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944); *Federal Power Commission v. Natural Gas Pipeline Co.*, 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037 (1942); *Railroad Commission v. Rowan and Nichols Oil Co.*, 310 U.S. 573, 60 S.Ct. 1021, 84 L.Ed. 1368 (1940).

3. *See*, B. Schwartz, *Administrative Law* (1976) § 223; Davis, *Administrative Law Text* (1972) § 29.08; Gelhorn and Byse, *Administrative Law*; *Cases and Comments* (1974) § 9.

. . . . [i]t would be presumptuous for courts, on the basis of conflicting expert testimony, to deem the view of the administrative tribunal, acting under legislative authority, offensive to the Fourteenth Amendment." 310 U.S. at 580, 581, 582, 60 S.Ct. at 1024.

Recently in the *Permian Basin Area Rate Cases*, 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968), gas operators alleged, in so many words, that a Federal Power Commission area rate scheme was confiscatory. The Supreme Court merely applied the substantial evidence rule in view of these cases stating:

"Section 19(b) of the Natural Gas Act provides without qualification that the 'finding of the Commission as to the facts, if supported by substantial evidence, shall be conclusive.' More important, we have heretofore emphasized that Congress has entrusted the regulation of the natural gas industry to the informed judgment of the Commission, and not to the preferences of reviewing courts. A presumption of validity therefore attaches to each exercise of the Commission's expertise, and those who would overturn the Commission's judgment undertake 'the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences.' *FPC v. Hope Natural Gas Co., supra,* 320 U.S., at 602, 64 S.Ct., at 288. We are not obliged to examine each detail of the Commission's decision; if the 'total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end.' Ibid.

Moreover, this Court has often acknowledged that the Commission is not required by the Constitution or the Natural Gas Act to adopt as just and reasonable any particular rate level; rather, courts are without authority to set aside any rate selected by the Commission which is within a 'zone of reasonableness.' *FPC v. Natural Gas Pipeline Co.,* 315 U.S. 575, 585, 62 S.Ct. 736, 743, 86 L.Ed. 1037. No other rule would be consonant with the broad responsibilities given to the Commission by Congress; it must be free, within the limitations imposed by pertinent constitutional and statutory commands, to devise methods of regulation capable of equitably reconciling diverse and conflicting interests. It is on these premises that we proceed to assess the Commission's orders." 390 U.S. at 767, 88 S.Ct. at 1360.

## IV.

Counsel for both sides have cited cases of our sister states in which the independent judgment rule is either still the present scope of review, or has been specifically rejected. It is acknowledged that there is still a split of authority on this issue in state jurisdictions. *See,* B. Schwartz, *Administrative Law* (1976); I. A. Glick, *Independent Judicial Review of Administrative Ratemaking, The Rise and Demise of the Ben Avon Doctrine,* 40 Ford.L.Rev. 305 (1971). Alabama,[4] California[5] and Massachusetts[6] still adhere to *Ben Avon.* Alaska,[7] Maine,[8] Michigan,[9] and New York[10] have departed from *Ben Avon* and the independent judgment rule. The common ground in these latter decisions is that subsequent United States Supreme Court cases either eroded or failed to mention *Ben Avon* and thus destroyed its vitality. Per-

4. *General Telephone Company of Southeast v. Alabama Public Service Commission,* Ala., 335 So.2d 151 (1976).

5. *Bixby v. Pierno,* 4 Cal.3d 130, 93 Cal.Rptr. 234, 481 P.2d 242 (1971).

6. *Opinion of the Justices,* 328 Mass. 679, 106 N.E.2d 259 (1952).

7. *Keiner v. City of Anchorage,* 378 P.2d 406 (Alaska, 1963).

8. *Frank v. Assessors of Skowhegan,* 329 A.2d 167 (Me.1974).

9. *Michigan Consolidated Gas Co. v. Michigan Public Service Comm.,* 389 Mich. 624, 209 N.W.2d 210 (1973).

10. *New York Telephone Co. v. Public Service Comm'n,* 36 A.D.2d 261, 320 N.Y.S.2d 280 (1971).

haps the Supreme Court of New York (Appellate Division, Third Department) best summarizes the modern opinion of *Ben Avon*:

"So much has been critically said or left unsaid about the underlying principle of *Ben Avon* by the courts and by authoritative writers that the strength and substance of it has been dissipated.

．　　．　　．　　．　　．

Finally, it may be noted that lacking a constitutional basis for the rule, the policy reasons for not recognizing it are many and obvious. There should be an end to legal process. The courts should not be overburdened with parallel determination of disputes already decided by agencies of tested proficiency in the administrative field. The time consumed, the expense involved, the cumbersome procedures, and the loss of public confidence in administrative agencies all militate against the maintenance of a dual system of determining issues in rate cases." 320 N.Y.S.2d at 285, 286.

### V.

■ We conclude that the Supreme Court has abandoned the independent judgment rule of *Ben Avon* and that the substantial evidence test satisfies federal constitutional law. We reject the independent judgment rule as controlling Tennessee constitutional law and hold that the scope of review articulated in T.C.A. § 4–523(h) provides adequate standards within constitutional limits, for judicial determination of the issue of confiscation in rate cases.

Tennessee Code Annotated § 4–523(h) provides that a court may reverse or modify the PSC if the rights of the petitioner have been prejudiced because the decision is:

"(1) in violation of constitutional or statutory provisions;

(2) in excess of the statutory authority of the agency;

(3) made upon unlawful procedure;

(4) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion"

■ If the rates prescribed by the PSC are, in fact, confiscatory, its decision is in violation of constitutional provisions, and arbitrary, capricious and an abuse of discretion. An adjudication of confiscation requires a finding that the rates have passed beyond arbitrariness, capriciousness or an abuse of discretion. Thus, relief from confiscatory action by the Commission is available.

Subsection (5) requires a court to determine that the Commission's action is supported by both substantial and material evidence, and in doing so, "shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."

■ With respect to the action of legislative agencies, the broadest scope of judicial review, de novo, is prohibited by the separation of powers doctrine. *In re Cumberland Power Co., supra,* and *Hoover Motor Exp. Co., Inc. et al. v. Railroad & Public Utilities Commission et al., supra.* On the other hand, relief for petitioner from denial of due process, including confiscatory action, is a required function of the judiciary, as guardians of the Constitution. The Administrative Procedures Act provides a single set of standards that will enable Tennessee courts to adequately review PSC decisions, within constitutional limits, and it should be applied to this case and all cases not finally adjudicated. The additional comments on the effect of the UAPA on proceedings before PSC and review of its actions in *United Inter-Mountain Telephone Company v. Public Service Commission, supra,* are, of course, applicable to this and future cases.

### VI.

■ It follows that it would be inappropriate for the Court to review the action of the learned Chancellor at this time. The additional evidence presented in Chancery Court, not heard by PSC, must now conform to the tests prescribed in T.C.A. § 4–

523(e) or (g). We cannot determine whether the independent judgment standard, as applied by the Chancellor, was or was not indistinguishable from the review required by T.C.A. § 4–523(h).

This case is remanded to the PSC for redetermination of a reasonable rate of return based upon the present record and additional evidence bearing upon GT's actual experience, and factors relevant thereto. The order of June 4, 1976, will remain in effect until further action by the PSC.

The costs of this appeal will be divided equally between the parties.

COOPER, C. J., and HENRY, BROCK and HARBISON, JJ., concur.