■ In the Matter of INCORPORATED VILLAGE OF EAST WILLISTON, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.—Proceeding pursuant to Public Service Law § 128 to review so much of a determination of the Public Service Commission of the State of New York, dated November 22, 1988, as denied the Village of East Williston's application to reopen the record to permit it to

present new evidence with respect to the certification of environmental compatibility and public need for a 345-kilovolt underground electric transmission cable extending from the Sprain Brook substation of Consolidated Edison Company of New York, Inc. in Yonkers to the East Garden City substation of the Long Island Lighting Company in Nassau County, to permit the Public Service Commission to consider alternatives to the route of the cable under Roslyn Road.

Adjudged that the determination is confirmed insofar as reviewed, with one bill of costs.

In July 1984 the New York State Legislature determined that a new underground electric transmission line was necessary to supply Long Island with electricity from upstate sources, and it amended Public Service Law, article VII, § 126 to foreclose, as unnecessary, consideration by the Public Service Commission of the question of need and whether the proposed facility was in the public interest or convenience. The State Legislature and the Governor declared the transmission line to be a needed link between Long Island and the sources of more inexpensive power generated upstate and in Canada (legis mem, 1984 McKinney's Session Laws of NY [ch 520], at 3338; executive mem, 1984 McKinney's Session Laws of NY [ch 520], at 3614).

In February 1987 the Power Authority of the State of New York (hereinafter PASNY) submitted an application to the Public Service Commission for approval of construction of the underground cable.

Pursuant to Public Service Law § 121, an applicant may not begin preparation of a site without obtaining a certificate of environmental compatability and public need. In order to alert affected municipalities, and to afford each of them the opportunity to appear, the law requires that each be served with notice of the application (Public Service Law § 122 [2]). In accordance with that section, PASNY, the applicant, provided notice of its application to construct the proposed line to all affected municipalities, including the petitioner. If it desired to participate in the proceedings, the petitioner was required, within 30 days after the date given in the notice as the date for filing the application, to file a notice of intent to be a party (Public Service Law § 124 [1] [i]). Despite the statutory opportunity and invitations to become a party, including a letter dated July 14, 1987, in which the PSC "strongly encourage[d]" the petitioner to do so, it did not seek party status in a timely manner.

Public statement hearings were held in the Town of Eastchester in Westchester County and in Mineola in Nassau County on April 29 and April 30, 1987, respectively. Thereafter, there were extensive evidentiary hearings in which the petitioner did not participate as a party. Following the hearings the Commission, by order dated May 18, 1988, granted a certificate of environmental compatibility and public need for the 345-kilovolt underground electric transmission cable which traverses residential and commercial areas in the Counties of Westchester and Nassau and the waters of Long Island Sound. The certification order for the route of the transmission cable through Westchester County has recently been challenged but upheld by this court *(see, Matter of Village of Tuckahoe v Public Serv. Commn.,* 150 AD2d 466; *Matter of City of New Rochelle v Public Serv. Commn.,* 159 AD2d 441).

The petitioner and *amicus curiae* are now challenging the portion of the certification of the cable transmission line that traverses Nassau County and Long Island Sound.

The petitioner did not seek a rehearing following the certification order (Public Service Law § 128 [1]), but instead, noting that the Commission itself may at any time reopen a proceeding or grant a rehearing (16 NYCRR 2.8), petitioned the Commission to reopen the record on various grounds, including the contention that two unrelated cable leakages occurring subsequent to the evidentiary hearings constituted "new circumstances" *(see, Matter of Public Serv. Commn. v New York Cent. R. R. Co.,* 28 AD2d 1080) justifying reconsideration of the proceedings (16 NYCRR 2.8).

On June 26, 1988, one of the Long Island Lighting Company's underground cables ruptured in Carle Place, Long Island, leaking approximately 2,800 gallons of its liquid oil. On or about August 10, 1988, another rupture occurred in a Long Island Lighting Company submarine cable in Long Island Sound, leaking at least 1,000 gallons of oil. The petitioner argues that these leakages constitute new evidence which calls into question the evidence given at the hearings, and mandate reopening of the record to reconsider the structural soundness of the cable and the environmental impact of possible leakage of the dielectric fluids surrounding the cable.

The petitioner lacks standing to bring this petition. Public Service Law § 128 (1) provides that judicial review of the Commission's determinations may only be obtained by a party aggrieved by the order, who has applied for a rehearing within 30 days of the order, and who has brought the Appel-

late Division proceeding within 30 days after the issuance of a final order upon the application for rehearing. The petitioner never sought to become a party to the matter before the Commission, under either Public Service Law § 124 (1) (i) or (4). The petitioner thus cannot be an aggrieved party pursuant to Public Service Law § 128 (1). Furthermore, the petition is untimely, as the petitioner did not seek a rehearing within 30 days after issuance of the order *(see,* Public Service Law § 128 [1]; *see also, Matter of Long Is. Light. Co. v Public Serv. Commn.,* 105 Misc 2d 874, *affd* 80 AD2d 977).

Notwithstanding the petitioner's lack of standing and its failure to timely bring the petition, the Commission's order dated November 22, 1988, denying the petitioner's request to reopen the record, was proper.

The decision to refuse to reopen the record is within the Commission's discretion *(see, Matter of Long Is. Light. Co. v Public Serv. Commn.,* 134 AD2d 135, 146-147; *New York Tel. Co. v Public Serv. Commn.,* 36 AD2d 261, 268, *mod on other grounds* 29 NY2d 164). Here the environmental concerns now expressed were already considered in the evidentiary proceedings. Furthermore, the concerns as to the structural unsoundness of the cable itself cannot justify relocation of the cable to the alternative route urged by the petitioner. Therefore the Commission rationally concluded that the grounds urged by the petitioner did not warrant reopening the record for reexamination of the environmental issues previously considered.

Additionally, the Commission reiterated its concerns that the energy needs on Long Island are rapidly reaching a critical stage, and also observed that the petitioner still had recourse to voice its environmental concerns as the certification order obligated PASNY to file an environmental management and construction plan (hereinafter EM&CP). It is worth noting that in its order approving the EM&CP, which was issued after the date of the determination under review, the Commission addressed the petitioner's concerns with regard to the possibility of fluids leaking and contamination of the artesian wells that supply water to the village, as well as the impact on the trees on the village's Roslyn Road *(see,* order approving environmental management and construction plan, subject to conditions [eff Feb. 24, 1989]). The Commission also required PASNY to file a spill prevention containment plan which was approved by the Commission on May 2, 1989 *(see,* order approving spill prevention containment and control plan with conditions [eff May 2, 1989]).

Thus, the determination is not arbitrary, capricious, or an abuse of discretion, which is the extent of the scope of our review of the petitioner's claims *(see,* Public Service Law § 128 [2] [e]).

Finally, we note that the briefs of the *amicus curiae* may not introduce new issues, but may only relate to the issues raised by the parties *(see, Colgate-Palmolive Co. v Erie County,* 39 AD2d 641). Kooper, J. P., Sullivan, Harwood and Rosenblatt, JJ., concur.